QUIÑONES, DEMANDANTE Y APELANTE, *v.* ANA MARÍA SUGAR CO., INC., DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Mayagüez, en pleito sobre indemnización de daños y perjuicios.

No. 1388.—Resuelto en diciembre 19, 1916.[1]

COMPRAVENTA — CONTRATOS DE — ENTREGA DE LA COSA VENDIDA — DEPÓSITO DEL PRECIO.—Si bien es cierto que, de acuerdo con el artículo 1369 del Código Civil, el vendedor no está obligado a entregar la cosa vendida si el comprador no le ha pagado el precio, cuando en un contrato de compraventa de azúcar quedó implícitamente pactado que el precio se pagaría, siguiendo la costumbre de la plaza, al entregarse la mercancía que el vendedor debía conducir por su cuenta al almacén del comprador, no puede alegarse que el comprador debió haber entregado o depositado el precio de la mercancía para colocarse en condiciones de reclamar.

ID.—ENTREGA DE LA COSA VENDIDA—DAÑOS Y PERJUICIOS—COMPENSACIÓN—GANANCIA DEJADA DE OBTENER.—Cuando un vendedor deja de entregar la propiedad contra lo estipulado en el contrato, aun cuando aquélla no hubiere sido pagada todavía, el comprador tiene derecho a que se le coloque en la misma situación en que hubiere quedado de habérsele entregado la cosa, consistiendo la compensación, como expresa el artículo 1073 del Código Civil, en el valor de la ganancia dejada de obtener, o, bajo las circunstancias del presente caso, en la diferencia que existe entre el precio del contrato y el valor en el mercado en la fecha convenida para la entrega.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. José Sabater, Jorge V. Domínguez* y *Francisco Soto Gras.*

Abogado de la apelada: *Sr. Leopoldo Feliú.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El demandante y apelante estableció una demanda en la Corte de Distrito de Mayagüez sobre daños y perjuicios por violación de un contrato, alegando entre otras cosas lo siguiente:

''Que el día cuatro de agosto de 1914, y en esta ciudad de Maya-

---

[1] Denegada reconsideración en febrero 9, 1916.

güez, el demandante compró a la demandada 740 sacos de azúcar central segunda, al precio de tres dollars veinte y dos centavos y medio quintal, ($3.22½), según costumbre de esta plaza, valor de contado al momento de la entrega.

"Que a solicitud de la propia demandada y por exclusiva conveniencia de ésta, se convino entre demandante y demandada, que el azúcar vendido sería entregado al demandante en lotes o cargamentos parciales hasta fines de la semana subsiguiente a la fecha del contrato, o sea hasta el día 15 de agosto de 1914.

"Que la demandada, separándose por completo de los términos del contrato de compraventa de azúcar efectuados exigió por carta que recibió el demandante el día 5 de agosto de 1914, que éste depositase previamente el importe total de la factura formulada que remitía del azúcar vendido, ascendente a seis mil setenta y nueve dollars ($6,079).

"Que el demandante notificó a la Corporación demandada, por carta que le dirigió el mismo día 5 de agosto de 1914, que estaba dispuesto a aceptar la entrega del fruto en un sólo día y a satisfacer el total del precio convenido al momento mismo de dicha entrega.

"Que el día 6 de agosto de 1914, la Corporación demandada, comunicó al demandante que daba por cancelado el contrato de compraventa de azúcar a que se ha hecho referencia en los hechos anteriores.

"Que la Corporación demandada, no ha entregado el azúcar vendido al demandante ni en parte ni en todo y rehusa hacer la entrega de acuerdo con el ameritado contrato.

"Que el demandante ha estado siempre dispuesto a recibir dicho azúcar vendido y a pagar por el mismo el precio estipulado al efectuarse la entrega y ha cumplido por su parte con todas las condiciones del contrato.

"Que el día 10 de agosto de 1914 el demandante ofreció legalmente y de buena fe depositar el importe total de la factura ya formulada y que había recibido del azúcar vendido ascendente a $6,079, requiriendo para ello al Royal Bank of Canada, en esta ciudad de Mayagüez, y a pesar de ello, la demandada rehusa siempre hacer la entrega del azúcar vendido.

"Que debido únicamente a la falta de la demandada en entregar el azúcar vendido al demandante, éste ha sufrido daños y perjuicios por la suma de $6,173.24 o sea el montante de la diferencia del alza de precio del azúcar, ocurrida en la semana comprendida entre el 10 y el 15 de agosto de 1914."

La demandada y apelada después de hacer una negativa general, alegó como materia nueva constitutiva de oposición a la demanda:

"Que allá por el día 4 de agosto de 1914, en la ciudad de Mayagüez, Puerto Rico, el demandante y la demandada tuvieron o celebraron ciertas negociaciones sobre una venta por ésta a aquél de 748 sacos de azúcar de cañas dulces, la que habría de llevarse a efecto en las condiciones siguientes: el demandante habría de consignar aquel mismo día, previamente y por cuenta de la demandada, en el Royal Bank of Canada en Mayagüez, P. R., el importe de dicha partida de azúcar, o sea: la suma de $6,079 y hecha así dicha consignación, la demandada habría de entregar dicho azúcar al demandante por partidas de ciento sesenta sacos por ferrocarril la primera, al recibir la orden al efecto de dicho banco, y el resto por carretadas, durante la semana siguiente al día antes expresado.

"Que la condición del previo depósito del valor de dicho azúcar en el indicado banco, habría de ser y era una condición precedente y previa la obligación de entrega de dicha mercadería por la demandada al demandante, y fué impuesta y aceptada por la demandada, por encontrarse dicho azúcar afecto y sujeto a un contrato de pignoración de la misma con dicho Royal Bank of Canada, en Mayagüez, según el cual contrato la demandada no podía disponer en modo alguno de tal azúcar, sin la previa consignación o depósito de su importe, y autorización al efecto de dicho banco, todo lo cual sabía el demandante al llevarse a cabo dichas negociaciones.

"Que el demandante rehusó cumplir y aceptar dicha previa y precedente condición del depósito previo del importe de dicho azúcar y propuso entonces a la demandada, allá por el día 5 de agosto de 1914, que la entrega del azúcar objeto de dichas negociaciones y a que se contrae la demanda, la fuera hecha por la demandada, en un solo día, y que pagaría su importe una vez hecha la entrega de cada partida cuya oferta o proposición no aceptó esta demandada; y alega ahora esta demandada que el demandante no le pagó, ni le ofreció pagar, ni le consignó, (tendered) tampoco en las expresadas fechas, la dicha suma importe del azúcar objeto de dichas negociaciones, parcial ni totalmente, ni en modo alguno, por lo que esta demandada alega que las repetidas negociaciones nunca llegaron a convertirse en contrato alguno."

También alegó la demandada y apelada entre otras defensas especiales la siguiente:

"Que aun cuando las negociaciones habidas entre el demandante
y la demandada, en la expresada fecha, agosto 4 de 1914, constituye-
ran un contrato perfeccionado y obligatorio para ambas partes, tal
contrato quedó terminado y rescindido por el propio demandante al
rehusar éste depositar el importe del azúcar ya mencionado, en la
forma que se deja expuesto en esta contestación y al hacer su pro-
posición para la entrega del fruto de modo y en fecha distinta a como
se había especificado y convenido en el pretendido contrato, en que
funda esta acción el demandante."

La corte de distrito con fecha 29 de mayo de 1916, dictó
sentencia a favor de la demandada al efecto de que el deman-
dante no recobre nada de la demandada por los motivos y
fundamentos que se alegan en su demanda y desestimó dicha
demanda.

El juez sentenciador declaró probados los siguientes he-
chos entre otros que fueron establecidos por la prueba, a
saber:

"Que allá por el día 4 de agosto de 1914, el demandante y la de-
mandada celebraron un contrato por teléfono, por virtud del cual
ésta vendió a aquél 748 sacos de azúcar, central segunda, de un peso
de 252 libras cada uno, al precio de $3.22½ el quintal cuyo azúcar
puso y dejó la demandada inmediatamente a disposición del deman-
dante, en el almacén de la factoría, sita ésta en el barrio de Sabanetas
de la municipalidad de Mayagüez, cuyo azúcar había de entregarse
por la demandada al demandante en la proporción de 160 sacos por
ferrocarril tan pronto como la demandada tuviera la orden de entrega
del Royal Bank of Canada, Sucursal de Mayagüez, y el resto en el
curso de la semana siguiente a la que comprendía dicha fecha de cele-
bración de este contrato, y en carros; conviniéndose asimismo por
ambas partes, en que el importe de dicho azúcar, o sea la suma de
seis mil setenta y nueve dollars, ($6,079) se depositaría previamente
por el demandante en el expresado banco, y por cuenta de la deman-
dada para poder ésta hacer la entrega del azúcar así vendido.

"Que la demandada, el mismo día, remitió al demandante la fac-
tura, que comprendía esta operación, cuyo documento recibió este
último al día siguiente.

"Que dicho azúcar estaba, al celebrarse dicho contrato, pigno-
rado por la demandada al mencionado banco, por documento privado
suscrito ante notario con fecha anterior a la de la celebración de

dicho contrato de compraventa, y que la demandada no podía disponer de dicha mercadería sin cubrir previamente su valor o importe en el banco.

"Que el demandante, al día siguiente de celebrado dicho contrato, esto es, el día 5 de agosto de 1914, y sin motivo alguno, para ello, en carta que dirigió a la demandada, notificó a ésta de su inconformidad con la condición de pago del precio de la expresada mercadería, en la forma convenida en dicho contrato.

"Que en esta misma carta dicho demandante propuso a la demandada que el expresado azúcar le fuere entregado, si ella así lo deseaba, en un solo día, sin decir ni proponer nada en cuanto a la forma en que pagaría su importe.

"Que la demandada no aceptó la nueva condición que le propuso el demandante y que se deja relacionada en el hecho anterior.

"Que la demandada, el día 6 de agosto de 1914, comunicó al demandante, por carta que le escribió en dicha fecha, que el contrato que se deja relacionado, quedaba terminado y rescindido, lo que le confirmó por carta del día 7 del mismo mes, y que esto lo hizo la demandada por no haber cumplido el demandante con la condición estipulada para el pago.

"Que el demandante no hizo a la demandada oferta alguna de pagarle el importe de dicho azúcar, fijado en su dicho contrato, ni tampoco ofreció consignar ni consignó el mismo, mientras se mantuvo el expresado contrato en vigor por la demandada.

"Que el día 10 de agosto del repetido año de 1914, después que el demandante había notificado a la demandada su repudiación de la forma de pago y héchole la contraproposición en cuanto a la forma de entrega de la mercadería contratada, fué que dicho demandante intentó consignar en el expresado Royal Bank of Canada, Sucursal de Mayagüez, el precio de dicho azúcar, en la suma que se había convenido y en un cheque."

Examinada cuidadosamente toda la prueba, en manera alguna podemos estar de acuerdo con la corte sentenciadora en sus conclusiones en cuanto a la naturaleza del contrato original, o dejar de llegar a la conclusión de que el demandante y apelante probó claramente las alegaciones sustanciales de su demanda citada anteriormente.

Para hacer una exposición completa de todas las circunstancias y consideraciones por las cuales nos vemos obligados a resolver que la corte de distrito cometió un error tan mani-

fiesto en cuanto al particular que exige la revocación de la sentencia, sería preciso examinar minuciosamente toda la prueba lo que haría demasiado larga esta opinión sin objeto práctico alguno.

Será bastante con expresar que estamos enteramente convencidos en vista del examen que hemos hecho de los autos en su totalidad que en la conversación que tuvo lugar por teléfono el día 4 de agosto y que constituyó el verdadero contrato entre las partes nada se dijo en absoluto de hacer un depósito de dinero como requisito previo de la entrega del azúcar. La conducta del demandante y apelante desde el principio hasta el fin de la controversia está perfectamente de acuerdo con el relato que hace de esa conversación, no puede explicarse por ninguna otra teoría, y está enteramente en conflicto y no puede armonizarse con lo que dice la demandada y apelada y la teoría que sustenta la corte sentenciadora. Sin discutir la conducta del agente de la demandada y apelada, o sus móviles, podemos decir que no parece existir motivo concebible por parte del demandante y apelante para la supuesta renuncia de su contrato, o para su negativa a verificar el depósito, si en realidad convino en hacerlo. El había estado ansioso por comprar el azúcar. Había procurado cerrar la transacción el día anterior lo que casi tenía conseguido; pero la demandada y apelada tuvo cuidado, solicitó un plazo de una hora para ratificar el contrato verbal y tardó veinte y cuatro horas en considerar el asunto sin confirmar el contrato o retirar su intención de aceptar la proposición como se le hizo. El día 4 el demandante y apelante, aceptando una oferta hecha en el curso de una conversación por teléfono, convino finalmente en pagar $3.22½ por el mismo azúcar que casi había conseguido a $3.15 el día 3. Se convino la forma de la entrega y quedó perfeccionado el contrato. El mercado subía el día 4 y siguió subiendo. La demandada y apelada tenía conocimiento al ser escrita su carta de ratificación de que las condiciones indicaban un nuevo aumento en los precios. Cada hora que pasaba daba más valor al con-

trato para el comprador y proporcionaba mayores desventajas al vendedor. El demandante y apelante tuvo con exceso la suma en cuestión sin utilizarla en nada depositada en el mismo banco en que alega la demandada y apelada que el demandante había convenido en depositar el precio de la venta. No hay una explicación racional para su negativa a hacer dicho depósito como no sea la que ha referido, a saber, un verdadero motivo de indignación por lo que él consideraba como una imputación gratuita que se reflejaba en su responsabilidad y crédito financiero según se desprendía de la tentativa de mezclar en el asunto una estipulación sobre un depósito como condición previa a la entrega, contenida en la carta de la demandada y apelada ratificando la conversación habida por teléfono. Puede ser que el agente de la demandada y apelada hubiera querido incluir la estipulación en el contrato primitivo y creyera que así lo había hecho. Puede que no haya tenido el deseo de eludir o negar su contrato y que procediera con la mejor buena fe en todo el asunto. Pero como quiera que fuere el caso, no nos cabe duda de que el primer aviso que tuvo el demandante y apelante del pretendido requisito de hacer un depósito del precio de venta era el que aparecía contenido en la carta de la demandada y apelada ratificando el contrato hecho por teléfono y después que el contrato de compraventa había sido perfeccionado.

Se ha discutido mucho el hecho de si el apelante debió haber entregado o depositado el precio del azúcar para colocarse en condiciones de reclamar. Es cierto que el artículo 1369 del Código Civil, invocado por el apelado, dispone, que ''el vendedor no estará obligado a entregar la cosa vendida, si el comprador no le ha pagado el precio,'' pero también lo es que dicho precepto legal añade ''o no se ha señalado en el contrato un plazo para el pago,'' y de la prueba aparece que en el contrato celebrado entre demandante y demandado quedó implícitamente pactado que el precio se pagaría, siguiendo la costumbre de la plaza, al entregarse la mercan-

cía que el demandado debía conducir por su cuenta desde la
central al almacén del demandante en la ciudad de Mayagüez,
durante la semana siguiente a la de la celebración del contrato,
y tal entrega jamás se verificó por la parte demandada. Véase
también el artículo 1222 del propio código, que prescribe que
"los contratantes pueden establecer los pactos, cláusulas y
condiciones que tengan por conveniente, siempre que no sean
contrarios a las leyes, a la moral y al orden público."

La demandada y apelada también discute con alguna ex-
tensión en su alegato que lo que el demandante y apelante
en realidad pretende recobrar son las ganancias que espe-
raba obtener, las cuales son demasiado inciertas, remotas y
especulativas por su naturaleza para ser consideradas como
daños en este caso a falta de prueba de la existencia de un
verdadero contrato para la reventa del azúcar y del cual tenía
conocimiento la demandada y apelada al hacerse la venta.

Pero el demandante y apelante no alega daños especiales
por razón de contratos frustrados sobre reventa, u otras cir-
cunstancias excepcionales desconocidas para la demandada
y apelada. El demandante y apelante había estado haciendo
negocios en Mayagüez por espacio de muchos años, negociando
en azúcar y café, habiendo comprado azúcar anteriormente a
la demandada y apelada en igual forma y en las mismas con-
diciones y términos que en el presente caso, pagando por
ella a su recibo, después de pesarla y examinarla. El azú-
car de que se trata en este caso era una pequeña porción de
la que retenía la misma demandada y apelada en su factoría
y almacén en espera de mejores precios, y existe prueba ten-
dente a demostrar que por lo menos uno de los motivos para
hacer la venta la vendedora era la falta de capacidad de sus
almacenes y el deseo de remediar el apiñamiento que existía
en el almacén de su factoría, encontrándose ya cargada parte
del azúcar así vendida en un carro de carga por falta de
espacio adecuado en otro lugar. La negociación misma se
basaba en los precios corrientes del mercado de Nueva York
como se conocían en esa fecha y la cuestión de la fluctuación

del mercado era ciertamente tomada en cuenta por las partes. La prueba en conjunto no ofrece duda de que las partes tenían en cuenta la ganancia o pérdida futura según el alza o baja en los precios del mercado de Nueva York.

"Las razones en que se basa la regla general de excluir las ganancias al estimar los daños y perjuicios son, (1) que en la mayoría de los casos dichas ganancias dependen demasiado de numerosas y variables contingencias para que puedan constituir una medida positiva y segura en la estimación de los daños y perjuicios; (2) porque tal pérdida de ganancias generalmente es remota y no la consecuencia directa e inmediata del quebrantamiento del contrato; (3) el convenio de pagar tal pérdida de ganancias, en casos de incumplimiento en la ejecución, no forma parte del contrato, ni puede decirse por su naturaleza y condiciones que fué tenida en cuenta por las partes. Surgen, sin embargo, casos en que se dice que la pérdida de las ganancias ha sido considerada claramente por las partes aun cuando no se ha previsto en las condiciones del contrato, y cuando tales ganancias no están sujetas a ser impugnadas por inciertas o remotas. Un ejemplo de esta última clase ocurre cuando el contrato se celebra con el fin, por lo menos en parte, de que la parte pueda dar cumplimiento a un contrato colateral del cual resultan ganancias y de cuya existencia informó ésta a la otra parte con anterioridad al otorgamiento del contrato. En tales casos la pérdida de ganancias provenientes del contrato colateral está ciertamente en la mente de las partes y no es remota o especulativa.

"Si un vendedor deja de entregar la propiedad según lo estipulado en su contrato, habiendo pagado por ella el comprador queda éste privado del beneficio que le hubiera podido reportar esa venta de haberse consumado, el cual es una pérdida igual al valor que tenía la propiedad cuando debió haber sido entregada, con intereses a partir de esa fecha. Por lo general este valor puede ser probado de un modo cierto. Si no se ha pagado por la propiedad todavía la compensación continúa con respecto al valor y consiste en la diferencia entre el precio del contrato y el valor. De manera, pues, que el comprador tiene derecho a recobrar tomando en consideración la ventaja que hubiera obtenido por la ejecución del contrato, esto es, la ganancia que pudo haber recibido por virtud de la negociación. Tiene derecho a una suma igual a la que necesitaría para obtener la propiedad de poder ser obtenida. Por otra parte, si un comprador rompe su contrato, la propiedad queda en poder del vendedor; su pérdida es igual a la diferencia entre el precio del contrato y cualquiera otra

pequeña suma que valiese la propiedad cuando el comprador estaba obligado a tomarla y a pagar su importe. La pérdida que sufre es la ganancia que hubiera obtenido de haber consumado la venta.''

1 Sutherland sobre Daños, Tercera Edición.

Sección 59, página 187.

''El modo general de reparar los daños y perjuicios por la infracción por parte del vendedor de un contrato de venta es mediante compensación teniendo derecho el comprador a que se le coloque en la misma situación en que hubiera quedado si no hubiera sido por dicha violación. Esto se consigue en una gran mayoría de casos concediendo una indemnización por dicho incumplimiento de la diferencia entre el precio del contrato y el precio del mercado de la propiedad vendida en la fecha y lugar de la entrega, o al ocurrir el incumplimiento.

''El fundamento de esta regla es que al dejar el vendedor de verificar la entrega el comprador puede acudir al mercado en la fecha y lugar de la entrega y adquirir la misma clase de artículos al precio del mercado. Y el efecto por consiguiente no consiste en recobrar las ganancias que pudo haber obtenido el comprador si no hubiera sido por el quebrantamiento del contrato sino simplemente dar al comprador aquéllas a que tenía derecho por virtud de su contrato, y el de colocarle en la misma condición en que trató de colocarse de modo que pueda seguir el curso que pretendió seguirse originalmente y obtener las ganancias que esparaba o realizar el objeto que tuvo presente.''

Nota al caso de *Guetzkow Brothers Co.* v. *Andrews & Co.*, 52 L. R. A. 209.

En Puerto Rico, la ley misma especifica la ganancia dejada de obtener como base para la reclamación de daños y perjuicios. La indemnización de daños y perjuicios comprende, dice el artículo 1073 del Código Civil, no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor.

En el presente caso parece que la demandada y apelada realmente vendió en el mes de agosto grandes cantidades de azúcar a precio de $6.52 incluyendo en ellas, según parece, el lote vendido al demandante y apelante a precio de $3.22½. De donde se desprende que ya que se considere la diferencia en el precio como daños y perjuicios o como producto

de un presunto fideicomiso (*resulting trust*), la ganancia así obtenida por la demandada y apelada sobre el azúcar del demandante y apelante pertenece a éste último y nó a la primera. No estamos dispuestos, por consiguiente, a analizar muy detenidamente qué es lo que puede constituir o nó la medida técnica más adecuada para los daños y perjuicios sufridos.

La demandada y apelada insiste en que deben ser tasados los daños y perjuicios, de ser tasados, tomando por base la diferencia entre el precio de Nueva York en agosto 4 en que se hizo el contrato y agosto 6 en que la demandada y apelada trató de rescindir el contrato mediante notificación al demandante y apelante. Admitiendo en pro del argumento que el demandante y apelante estaba en el deber de buscar otros contratos con otras personas para aminorar sus daños sufridos por la violación del contrato por parte de la demandada y apelada, la alegación tendría más fuerza si la demandada hubiera mostrado en atenuación de los daños y perjuicios que el demandante pudo haber obtenido la misma cantidad de azúcar en otra parte de Mayagüez en 6 de agosto a precios de Nueva York rebajando el descuento ordinario para atender al costo de transportación. A falta de semejante constancia nos inclinamos a aceptar las cifras del demandante y apelante basadas en los precios de Nueva York al vencer el término dentro de cual la demandada había convenido en entregar el azúcar, deduciendo el descuento ordinario.

No hemos pasado por alto la cuestión levantada por la demandada y apelada al empezar acerca de la suficiencia de la demanda, la que entendemos que aduce hechos suficientes para constituir una causa de acción.

La sentencia apelada debe ser revocada y en su lugar dictarse otra a favor del demandante y apelante por la suma especificada en su demanda con intereses sobre la misma a partir del 27 de octubre de 1914, fecha en que se notificó a la demandada la demanda enmendada, hasta su solvento, a

razón del 6 por ciento anual, sin. especial condenación de costas.

> *Revocada la sentencia apelada y dictada otra declarando con lugar la demanda y ordenando que el demandante obtenga de la demandada la suma reclamada con intereses a razón del seis por ciento, contados desde la fecha en que se notificó la demanda enmendada, sin especial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.